UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Moe M. Al-Dolemy,

        Plaintiff,

v.

FBI Detroit Field Office,

        Defendant.

Case No. 21-10809
District Judge Linda V. Parker
Magistrate Judge Jonathan J.C. Grey

_____/

## REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 33)

Moe M. Al-Dolemy, an incarcerated person, brings this pro se complaint against the Federal Bureau of Investigation Detroit Field Office ("FBI") alleging it failed to fulfill his Freedom of Information Act ("FOIA") request. (ECF No. 1.) Before the Court is the FBI's motion for summary judgment. (ECF No. 33.) The motion is fully briefed.

The Court **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED.**

### I.    Background

Al-Dolemy alleges that FBI agents engaged in misconduct leading to his warrantless arrest and conviction for state crimes. (ECF No. 1, PageID.24.) In an

effort to recover information about his arrest, Al-Dolemy claims that he sent two

FOIA requests to the FBI Detroit Field Office, 477 Michigan Avenue, Detroit, MI.

(*Id*. at PageID.3-4, 20.) Al-Dolemy claims that he submitted his first FOIA request

on February 4, 2021, seeking employment information about an alleged FBI Agent

in the Detroit office, Samer Kato. (*Id.*, at 3.) Al-Dolemy alleges that Kato

interviewed a confidential informant, Hadeel Jaffar Khalasawi, and used FBI

equipment to listen to audio recordings in connection with Al-Dolemy's state

criminal prosecution.

Al-Dolemy claims that he submitted his second FOIA request on February

16, 2021, seeking information about confidential informant, Khalasawi. (*Id*. at 4.)

Al-Dolemy alleges that Khalasawi provided the FBI with information that was

used in his state prosecution.

The FBI Detroit Field Office claims that it did not receive either one of Al-

Dolemy's FOIA requests. (ECF No. 33, PageID.174.)

## II.    Legal Standard

Under Rule 56(a), courts must grant motions for summary judgment "if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

genuine dispute of material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve*

2

*Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, a fact is material "only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing *Anderson*, 477 U.S. at 248).

In reviewing a summary judgment motion, the Court must draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The burden of demonstrating the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears this responsibility by identifying portions of the record that show the absence of a genuine issue as to any material fact. *Id.* If the moving party meets its burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the moving party is then entitled to summary judgment. *Id.* at 322.

### III.   Analysis

### A. FOIA Exhaustion

The FBI argues that Al-Dolemy's FOIA claim must fail as he did not

exhaust requisite administrative remedies under FOIA by submitting a proper

FOIA request. (ECF No. 33, PageID.179.)

Before filing a FOIA claim, a claimant must exhaust administrative

remedies. *Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226, 228

(6th Cir. 2005); *see also Lamb v. IRS,* 871 F. Supp. 301, 303 (E.D. Mich. 1994).

Usually, failure to exhaust is fatal.

There are two ways to exhaust administrative remedies. *Fields v. I.R.S.*, No.

12-14753, 2013 WL 3353921, at *4 (E.D. Mich. July 3, 2013). Exhaustion may be

either actual or constructive. *Id*. Actual exhaustion occurs when an individual

sends a proper FOIA request, the agency denies the request in part or in its entirety,

and the individual appeals the adverse decision within the period determined by the

head of the agency. *Id*. (citing *Taylor v. Appleton*, 30 F.3d 1365, 1368 (11th Cir.

1994); *see also* 5 U.S.C. § 552(a)(6)(A)(III). Constructive exhaustion occurs when

the agency does not respond to the FOIA request within 20 business days after

receiving the request. 5 U.S.C. § 552(a)(6)(A)(i).

For actual exhaustion, the requester must first send a proper FOIA request to

the agency. A proper request is one that is sent in accordance with the agency's

"published rules stating the time, place, fees (if any), and procedures to be

followed." 5 U.S.C. § 552(a)(3)(A). According to the FBI's website and published

rules, individuals are to mail or fax FOIA requests to:

Federal Bureau of Investigation

Attn: Initial Processing Operations Unit

Record/Information Dissemination Section

200 Constitution Drive

Winchester, VA 22602

Fax: (540) 868-4997

https://www.fbi.gov/services/freedom-of-informationprivacy-act/requesting-
fbi-records.

Al-Dolemy bears the burden to establish that he sent a proper FOIA request.

In a FOIA action, the Court can grant an agency's summary judgment motion if it

provides affidavits or declarations of its reasoning for nondisclosure and those

affidavits or declarations are uncontested by contrary evidence or evidence of the

agency's bad faith. *Burke v. U.S. Dept. of Justice*, 298 F.Supp.3d 119, 122 (D.D.C.

2018) (quoting *Thomas v. FCC*, 534 F.Supp.2d 144, 145 (D.D.C. 2008)).

The FBI submitted a signed affidavit from Michael G. Seidel, the Section

Chief of the FBI's Record/Information Dissemination Section ("RIDS"),

explaining the FBI's efforts to search for FOIA requests received from Al-Dolemy.

RIDS searched "Moe M. Al-Dolemy" and "Al-Dolemy" in its FOIA database to

locate any requests received and the system returned zero results. (ECF No. 33-2,

PageID.196.) Seidel's affidavit also states that RIDS reached out to the Detroit

Field Office to see if they received a request from Al-Dolemy. (ECF No. 33-2,

PageID.196.) The Detroit Field Office stated that its legal unit forwards any

requests that it receives to RIDS and the office forwarded no requests from Al-

Dolemy. (*Id*., PageID.197.) Seidel's affidavit demonstrates the FBI pursued a

reasonable, diligent search of FOIA requests from Al-Dolemy.

In his response, Al-Dolemy did not attach exhibits or evidence to counter the

FBI's declaration. However, as best as this Court can decipher Al-Dolemy's

complaint, it appears that he attached two FOIA requests as exhibits to his

complaint.

Under Rule 56(c)(3), Al-Dolemy may support his factual position by citing

to particular parts of materials in the record, including documents. In his response,

Al-Dolemy cites to his complaint and particular exhibits. (ECF No. 34,

PageID.241.) The Court will consider the complaint's exhibits.

Al-Dolemy attached a document to his complaint entitled "Freedom of

Information Request Title 5 § 552a". (ECF No. 1, PageID.7.) This document is

addressed to the FBI Detroit Office, 477 Michigan Avenue, Detroit, MI. (*Id.*) In

the document, Al-Dolemy requests all "Form 302's bearing the name Samer Kato".

(*Id.*) This FOIA request is dated February 4, 2021.

Similarly, Al-Dolemy attached another document to his complaint and addressed it to the FBI Detroit Office. (ECF No. 1, PageID.11.) This document is not entitled Freedom of Information Request, but he requests information – pursuant to the "Title 5 USC 552 FOIA Statute" – about Hadeel Jaffar Khalasawi. (*Id*.) This FOIA request is dated February 16, 2021. (*Id*.)

It is unclear whether Al-Dolemy actually sent these documents to the FBI Detroit Office. Al-Dolemy attached a "Disbursement Authorization" from his prison facility which appears to show that he sent legal mail to "FBI Field Office Detroit 477 Michigan Ave … Detroit, MI 48226" on February 22, 2021. (ECF No. 1, PageID.17.) After viewing the motion in the light most favorable to Al-Dolemy, the non-movant, the Court presumes Al-Dolemy sent the two FOIA requests to the FBI Detroit Field Office on February 22, 2021. However, Al-Dolemy provided no evidence that the FBI received the requests.

Courts have held that the plaintiff must present evidence that the government agency actually received the FOIA request. *Tunchez v. U.S. Dep't of Justice¸*715 F.Supp.2d 49, 53 (D.D.C. 2010). In *Tunchez*, the plaintiff claimed he submitted a FOIA request to the FBI's office in Brownsville, Texas. After searching the FBI FOIA databases, an FBI representative submitted a declaration attesting that the FBI had no records of Tunchez's FOIA request. Tunchez did not present any evidence – such as a return receipt for mail or a letter of acknowledgement – that

contested the FBI's position. The Court held that "[w]ithout such evidence to overcome the FBI's sworn statement that it has no record of receiving the Brownsville requests, Tunchez's FOIA claim arising from the Brownsville requests must fail." *Id*. Although not binding, the Court finds *Tunchez* persuasive. Thus, Al-Dolemy's FOIA claim should fail as he did not provide evidence that the FBI received his FOIA request.

Even if the Court determined that the FBI Detroit Field Office received the FOIA requests, the requests were not sent in accordance with the FBI's published FOIA procedure, as required by statute. 5 U.S.C. § 552(a)(3)(A); 28 C.F.R § 16.3(a)(1). Per the FBI's procedures, requesters are to send FOIAs to 200 Constitution Drive, Winchester, Virginia. Al-Dolemy did not do that. Al-Dolemy does not cite, and the Court is unable to find, support that would excuse him from complying with the FBI's published FOIA procedures.

In his briefing, Al-Dolemy claims that he provided the U.S. Attorney's Office (USAO) with notice of the FBI's alleged misconduct. He claims that the USAO talked to the FBI Detroit Field Office during the investigation, effectively putting the FBI on notice of the misconduct allegations. (ECF No. 34, PageID.243.) Al-Dolemy erroneously relies on notice as a FOIA request. There are certain procedures that must be followed to submit a proper FOIA request.

Since Al-Dolemy failed to present evidence that the FBI received a proper

FOIA request, he failed to establish actual or constructive exhaustion.

Ordinarily, failure to exhaust requires dismissal of a complaint, however,

because the FBI created FOIA requests for Al-Dolemy and responded to the merits

of the requests, the Court also will consider the substance of those requests. *See*

*e.g.*, *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison

officials decline to enforce their own [exhaustion] requirements and opt to consider

otherwise-defaulted claims on the merits, so as a general rule will [the Court].")

## B. FOIA Exemptions

After receiving the complaint, the FBI processed Al-Dolemy's FOIA

requests as a courtesy. (ECF No. 33, PageID.172.) The FBI assigned request

number 1503588-000 to the request relating to Hadeel Jaffar Khalasawi and

request number 1503598-000 to the request relating to Samer Kato. (*Id*. at 174.)

The FBI sent Al-Dolemy a "*Glomar"* response notifying him that it was

neither confirming nor denying the existence of responsive records to either of his

FOIA requests – pursuant to FOIA Exemptions 6 and 7(C) – as Al-Dolemy's FOIA

requests involved third parties. (*Id*.) A *Glomar* response is proper if "the fact of the

existence or nonexistence of agency records falls within a FOIA exemption." *Wolf*

*v*. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007). The FBI closed both FOIA requests.

Al-Dolemy appealed the FBI's decision to the Department of Justice's Office of

Information Policy (OIP). (ECF No. 33, PageID.175.) On January 25, 2022, the

OIP affirmed the FBI's closure of Al-Dolemy's requests.

Agencies are exempt from providing information under the Act for a number

of reasons. Under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), an agency is exempt

from providing information of personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal

privacy. Additionally, FOIA exemption 7(C), 5 U.S.C. § 552(b)(7)(C), exempts

records or information compiled for law enforcement purposes if that information

could reasonably be expected to constitute an unwarranted invasion of personal

privacy.

Since Exemption 7(C) provides broader privacy protections than Exemption

6, the Sixth Circuit found it useful to analyze Exemption 6 under Exemption 7(C).

*Rimmer v. Holder*, 700 F.3d 246, 256 (6th Cir. 2012). "In determining whether

information contained in law-enforcement records "could reasonably be expected

to constitute an unwarranted invasion of personal privacy," 5 U.S.C. §

522(b)(7)(C), a court must 'balance the privacy interest' in withholding the [ ]

information with the 'public interest in [its] release.'" *Id*. (citing *U.S. Dept. of*

*Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762 (1989)). The

public interest to be weighed is "the extent to which disclosure would serve

FOIA's core purpose of contributing significantly to public understanding of the

Government's operations or activities." *U.S. Dept. of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm.*, 489 U.S. at 775).

Likewise, Seidel declares that "[p]ursuant to long standing policy, the FBI will neither confirm nor deny the existence of law enforcement records about a third party without a privacy waiver or proof of death, unless the requester establishes a public interest in disclosure that outweighs the third party's privacy interests." (ECF No. 33-2, PageID.206.)

Exemption 7(C) protects the personal privacy of individuals mentioned in law enforcement records, including informants and investigators. *Id*. Al-Dolemy does not address why a public interest outweighs the various privacy concerns with the disclosure of his requested information.

In *Rimmer v. Holder*, 700 F.3d 246 (6th Cir. 2012), the defendant – Rimmer – was convicted in state court for murder. Rimmer learned of the federal government's involvement in the investigation and believed that the investigation revealed exculpatory evidence that should have been turned over to him. In an effort to retrieve exculpatory evidence following his conviction, Rimmer sent the FBI a FOIA request for all documents pertaining to his case. In response, the FBI produced 786 pages but redacted identifying information from 539 pages. The FBI based its redactions on FOIA exemptions 6, 7(C), and 7(D). *Id*. at 255. Rimmer

challenged the FBI's redactions on the grounds that revelation of wrongdoing in the justice department served a public benefit. *Id*. at 258.

After acknowledging that the public does have an interest in "unearthing agency misconduct," *Id*., the Sixth Circuit held that Rimmer did not produce sufficient evidence "'that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" *Id*. (quoting *Nat'l Archives and Rec. Admin v. Favish*, 541 U.S. 157, 172(2004)). Additionally, the Sixth Circuit determined that Rimmer did not and could not show how the requested information would advance the public interest in revealing agency misconduct. That is, exposure of the redacted information "would not help the public discern whether the FBI was acting corruptly." *Id*. at 260.

It is not clear how Al-Dolemy's FOIA request for FD-302 reports involving alleged confidential informant, Hadeel Jaffar Khalasawi, will reveal government misconduct; Al-Dolemy does not make that connection in his complaint or response brief.

Al-Dolemy seeks to confirm Kato's employment as a Special Agent with the FBI and to retrieve FD-302 reports involving Kato. (ECF No. 1, PageID.3.; ECF No. 33-2, PageID.201.) Al-Dolemy alleges that Kato fictitiously testified during his trial as an FBI agent. *(Id*.) Al-Dolemy asserts that Kato participated in a

12

warrantless arrest.[1] (ECF No. 1, PageID.24.) Al-Dolemy requested that the U.S.

Attorney's office indict Kato for impersonating a federal agent. (*Id.*, at 4.) In

support of his allegations, Al-Dolemy included partial transcripts from Al-

Dolemy's criminal state trial. From the provided transcripts, it appears that Kato

serves as a Macomb County sheriff assigned to the FBI violent crimes task force

and assisted in providing English and Arabic translations for the FBI and Macomb

County. (ECF No. 1, PageID.30, 43-45.)

Although publicly revealed during trial that Kato served as a task force

officer with the FBI, Kato still retains a privacy interest in his employment or

affiliation with the agency. "The fact that an agent decided or was required to

testify or otherwise come forward in other settings does not give plaintiff a right

under FOIA to documents revealing the fact and nature of [his] employment."

*Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994). The Court must balance the need

for disclosure with Kato's privacy interest. Al-Dolemy did not show how FD-302

reports involving Kato, if any, will reveal agency misconduct. On this record,

viewing the facts most favorably to Al-Dolemy, the disclosure of Kato's

employment status does not advance the public interest in revealing misconduct,

---

[1] Although Al-Dolemy alleges that he was arrested without a warrant, Al-Dolemy does not allege that his arrest was unlawful. (ECF No. 1, ECF No. 34.) Some lawful arrests occur without a warrant. *Criss v. City of Kent*, 867, F2d 259, 262 (6th Cir. 1988) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). The Court expresses no opinion on the lawfulness or unlawfulness of Al-Dolemy's arrest.

particularly given the lack of allegations of how Kato's alleged lie about his employment status harmed Al-Dolemy or amounted to impropriety that a reasonable person would believe occurred. *Rimmer*, 700 F.3d at 258.

The Court finds that the FBI's *Glomar* response is grounded in FOIA Exemptions 6 and 7(C).

Al-Dolemy requests that the Court conduct a "Vaughn index" to determine a public interest to identify FBI agents. (ECF No. 34, PageID.243.) "Vaughn index" is a mechanism by which the Court can conduct an in camera review of the documents the agency redacts or withholds from disclosure to assess whether the documents should in fact be withheld. *Rugiero v. U.S. Dept. of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)). "Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith." *Id*. (citing *Jones*, 41 F.3d at 242). This presumption may be rebutted if there is evidence of bad faith. *Id*. In the absence of evidence of the agency's bad faith, the Court should limit its inquiry to the adequacy of the affidavits and evidence in the record. *Id*.

In his affidavit, Seidel states that Al-Dolemy is seeking records, if they exist, that would connect individuals – Khalasawi and Kato – to sensitive law enforcement operations of the FBI, which may result in negative and unwanted attention to the individuals. (ECF No. 33-2, PageID.207.) The affidavit

14

additionally states that confirming or denying an FBI employee's involvement in

an investigation may result in the employee being targeted and/or adversaries co-

opting the information to impersonate the employee's identity. *Id.*

Al-Dolemy did not produce evidence that the FBI withheld requested

documents in bad faith. Further, nothing in the record undermines Seidel's

affidavit or the FBI's claim that the requested documents fall under statutory

exemption. Thus, the Court need not conduct a "Vaughn index". The FBI Detroit

Field Office has established that no genuine issue of material fact exists.

### C. Conclusion

Accordingly, for the foregoing reasons, the Court **RECOMMENDS** that the

FBI Detroit Field Office's motion for summary judgment be **GRANTED**.


Dated:  September 29, 2022                s/**Jonathan Grey**
                                          Jonathan J.C. Grey
                                          United States Magistrate Judge

**Notice to the Parties About Objections**

Within 14 days of being served with a copy of this Report and
Recommendation, any party may object to and seek review of the proposed
findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D.
Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right
of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505,
508 (6th Cir. 1991). Only specific objections to this Report and Recommendation
are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health
& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be
labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify
precisely the provision of this Report and Recommendation to which it pertains. In
accordance with Local Rule 72.1(d), copies of objections must be served on this
Magistrate Judge.

A party may respond to another party's objections within 14 days after
service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be
concise and address each issue raised in the objections in the same order and
labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If
the Court determines that any objections are without merit, it may rule without
awaiting the response.

16

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2022.

<u>s/ **L. Hosking**</u>
Leanne Hosking
Case Manager